Good morning, Your Honors. May it please the Court, Joanna Schiavone on behalf of the appellant Jaswinder Singh, I'd like to reserve two minutes for rebuttal argument. I'll watch the clock. In this case, arising from Federal agents' detention and interrogation of Mr. Singh, there are three main issues. First, the district court's application of an erroneous standard in denying the motion to suppress statements obtained after a de facto arrest absent probable cause. Second, the erroneous denial of the Rule 29 motion for judgment of acquittal given the absence of evidence of Mr. Singh's intention to control the firearm on August 20, the date of possession charged. And third, the erroneous denial of the Rule 33 new trial motion given the weight of the evidence against constructive possession and the equities weighing against the conviction. So turning to the first issue. The district court's oral order in this case made clear that the court was really struggling to identify the applicable test and factors. The court stated that it did refer to Brown v. Illinois and Mendenhall, but the court never actually looked to Florida v. Royer, which was cited in the moving papers by the defendant. And Florida v. Royer outlines the applicable test under the Fourth Amendment. The court instead borrowed the test from Brown, which is the custodial detention test under the Fifth Amendment. It's not the right test to apply here. And interestingly, in this case, I'm sure as the Court is familiar, the facts here are very similar to Florida v. Royer. And so applying the Fourth Amendment test under Florida v. Royer and this Court's precedent in Edwards, Washington v. Lambert, and many other cases, we look both to whether a reasonable person would have felt free to leave and also the scope of the officer's conduct and whether it exceeded a detention. Let's say it was an arrest. Yes, sir. Why didn't they have probable cause? I mean, the ABC agents said he they asked him about the gun. I mean, they had this information that triggered the investigation. Maybe that's not quite enough of probable cause. Probably it's not. But then the ABC agents go in, they asked him about the gun, and they report to the federal agents that he goes reaching for the gun, and they say, stop. Why isn't that probable cause for an arrest? I mean, they did give him Miranda warnings, right? Subsequent to the escorting him to the back room with all the indicia of an arrest, he was given partial Miranda. But before he said anything, they gave him Miranda warnings. He was not given any Miranda warnings at that time when Agent Tambiolo, the ABC officer conducting their compliance check, I'm sorry, Agent McCullough, first approached my client. Let's get to the Miranda issue, if there's a Miranda issue, in a minute. Why, assuming this was an arrest, saying that you're applying a plea of sorority that it's an arrest, why wasn't there probable cause? So there are a couple of things to take a look at here. First, the district court, I think, Judge Kuczynski, had the same trouble that you're having, whether or not when they walked in the door they had. I'm really not having any trouble at all. I'm just asking a question. Or whether they had the district court. I think you might have some trouble, but I'm okay. Or the same query, at least, posing the same inquiry, and saying that the information available to the officers at the time that they walked in the door was not enough. So based simply on the information provided in the witness' affidavit that's in the sealed excerpts of record. And so when Agent McCullough then approached and talked to my client behind the sealed compartment, asking him about the gun, they still didn't have credible, specific, factual information that he was an illegal alien in possession of a firearm. There was not, at that moment, Your Honor, probable cause to arrest. And interestingly, Agent Prado, who was the chief agent. I'm sorry, what was missing? They didn't know that, they didn't have probable cause to think he was an alien? Yes, Your Honor. Or that he was an illegal alien? Yes, Your Honor. Or that he, or frankly, that he was in possession. I'm sorry, okay, there are two parts. That he was in possession, and that he is an illegal alien. Let's talk about the, that he was an illegal alien. Why didn't they have probable cause? It seems to me they, they, they researched the database and, I mean, it seems, it seems there's at least probable cause. It's not clear whether, whether from the police report as written by the agents that all of those record checks were completed either before the interrogation or subsequent to the interrogation, the report was actually written after. So this is not a case where we have a Warren application we can review as to what they knew going in. So, so it's not clear whether those record checks actually had been performed prior to engaging with, with my client when he was in the store. And so on the question of his immigration status, then, we're looking solely at the If there is a lack of clarity on this point, why doesn't that count against your client? If, if there's a doubt on the score, you know, you can present evidence. You can seek discovery. But. In fact, Your Honor. The record checks were completed. You are quibbling about the timing. If you think there's a problem with the timing, you need to present evidence that they were not done in time. So in fact, Your Honor, the trial counsel did request the discovery and was provided the, the report, the report that said excerpts of record 121 and 122, and, and interestingly, Agent Prado actually admitted that he did not think there was probable cause and that my client would have been free to leave until he made the incriminating admissions. And so while that's not just positive. You understand that what he thinks at that time doesn't weigh at all in this case. It's not just positive. It's not. It doesn't weigh at all in this case. It's certainly a reasonable officer standard, Your Honor, and, and I understand that. But under this Court's precedent in DeSalas v. Woo and other cases, it's at least a factor that the Court can take into consideration in determining whether there was probable cause. So it's certainly not just positive. But the agent, having reviewed the affidavit submitted by Ms. Labutiroth on the immigration point, did not think that there was probable cause to arrest. Another factor I think is relevant for consideration on probable cause is that the agents spoke throughout the, the, throughout the incident, they were on the phone with the U.S. attorney, and they did not at that point say, let's stop, we've got it, let's get a warrant, let's put together an application, let's go to a magistrate judge, let's call the duty judge. Nobody did that. And I think, again, it's not just positive, but I think it's another indication that the agents didn't think they had probable cause at that time. The government really didn't, the government didn't present the officers. What they did was they presented the report and then the witness statement. And so that was the evidence that the district court considered. And the district court said that, or made a finding at least, that the court did not believe that there was probable cause on the immigration issue. Now, the court didn't specify whether it thought that there was enough cause on that on the possession part, but the district court did not think there was sufficient probable cause with respect to the illegal alien status in finding there was no, no probable cause. Kennedy. What did they find out on that point once they talked to him? So subsequent to escorting my client back to the interview room, this small room, I think we all have a picture in our mind of what this circumstance was like. I don't have the picture. I'm sorry. Is this, is this the office? Is there any other room in this store, private room? It's, it appears from the record that there are two offices sort of back in the back of the store, and that he was led to one of them that is not the store owner's office, but another small room. It was described in the record as the size of a witness box in court. But that witness box doesn't mean anything. Does, do we have any record of how many feet it was, how wide it was, and how long it was? We don't have feet, Your Honor, but what we do have is, is that there was a, a table, and it was so small and cramped with three people inside that the officers stood. They stood in front of the door. They closed the door behind them. But there was evidence that they stood for the reason that it was very cramped at the table. Yes, Your Honor. And they testified to that. Yes, they did. So they're telling why they're standing. Yes. And, and so, and so in fact, the circumstances were that they padded down my client after escorting him, without giving him a choice, escorting him to the back room, seating him across the table, so he was seated, they were standing, it was hot, they closed the door, and they started interrogating him. And it was subsequent to that, that they elicited statements that he, that he illegally entered the country in 2005 from India, that he didn't have documented status in, in the United States, that he didn't have a U.S. passport. What's the significance of the fact that the words, in custody, were excluded from the Miranda form? So under this Court's precedent, Judge O'Scanlan, it's not necessary that, that, that fact is actually also not dispositive. Even advising a defendant or a suspect that they're not under arrest doesn't actually affect the determination as to whether it is a de facto arrest. So the fact that it was crossed out and that he agreed to the Miranda advisement while it can be taken into consideration, it's not dispositive here. And looking to all of the other. Breyer, is it persuasive? If it's not dispositive, is it persuasive? I would say in light of the, the really the all-fours analysis with Florida v. Royer, that is what should be dispositive in this case. It really controls the outcome, so. I think, I think you don't answer, you haven't answered the question. Can we consider that as a factual whether, whether it's dispositive or not? Is it in the mix? It's certainly one of the considerations under the totality of circumstances. And under Florida v. Royer, and then under this Court's precedent in Patino, we also have a fact here that was not precedent in Florida v. Royer. And in Patino, the client was an alien. She also did not speak English as a first language. And this Court acknowledged that when those circumstances are present, a defendant is even, or a suspect is even more likely to submit to the show of authority. And so, Your Honor, I would, I would say that there's even more factual basis here to consider under the totality that a reasonable person would not have thought they were free to leave. Now, turning to this Court's second analysis, the officers also used more, more force than was necessary under the circumstance. This case is similar to Washington v. Lambert in that there was no threat to their, their safety. They, they hadn't had a report of a recent violent crime. There was no. They escorted him in there, according to them, for privacy. This was a business, and I assume there were people around, and people don't be, like to be asked whether or not they're illegal and whether or not they've shot guns and things in, in groups. Is, is there something heinous about them wanting to have some place in privacy to discuss this? I don't think there's something heinous about it, Your Honor, but I do think it's still very similar to Florida v. Royer. In the same circumstance, they escorted the defendant in that case from the public arena, which is similar to this case, and they escorted them, the defendant, to a small interview room, just as in this case. And whether it was for privacy or not doesn't eliminate the indicia of an arrest that a reasonable person under the circumstances of my client putting yourself in his shoes would not have thought that they were free to leave. The district court also made a clearly erroneous finding that I think is really important in this case. The court said that he was advised he was free to leave. The record actually never shows that he was advised he was free to leave. It shows the contrary, and the government has not disputed that point. And so to the extent the district court relied on what is a critical fact and made that clearly erroneous finding, I think that also supports the fact that under Florida v. Royer and this Court's litany of precedents in the de facto arrest arena, which the district court did not apply, that the court was incorrect on that, on the suppression issue. If the court would like, I see I'm out of time. I'm happy to address questions on issues two and three or reserve for rebuttal if you would like. I'll hear from the government. Okay. Thank you. Good morning. My name is Kim Sanchez. I'm the assistant U.S. attorney who handled the suppression motion, the trial, and the brief in this matter. Your Honors, the government's position is that the trial court properly decided the suppression motion, properly found facts regarding the basis for the suppression motion, that the defendant was not in custody when the agents spoke with him and was not in custody until the time when agents placed him in handcuffs and told him that he was under arrest. Do I understand correctly that the district judge found that this was not a custodial interrogation? Yes, Your Honor. So there was a finding of fact on that issue? There was a legal finding, and the court found factually that the defendant was not in custody. Because, you know, we're talking about, call it a compartment or a sweat house or whatever, but the district judge had to sort that out. What part of that sorting out were facts that the district judge made that led him to the conclusion that this was not a custodial interrogation? Your Honor, the district court looked at the fact that this was a place of business where the defendant frequented, had been there for approximately four years, and so it was a familiar surroundings to the defendant, that he was familiar with this of the store, the store, the business was still operating while the officers spoke with the defendant in the back office, that the two officers were in plain clothes, they did not display any weapons, that the officers took care to advise the defendant in writing and orally that he was not in custody, and they had the form and crossed out on the form where there was an indication, the Miranda form, where there was an indication that the defendant had been taken into custody. And also the court found that the judge could not find any cultural or language issues that would prevent the defendant from understanding his custodial status or his rights. Now, opposing counsel seems to, I thought, disputed whether or not he was told he's What counsel had What is the support for the finding that Yes, Your Honor. In excerpts of the record at page 26, Judge Ishii said specifically, quote, Mr. Singh was told that obviously he was not being in custody, that he was free to leave. There's a pause But that's not evidence. That's a finding, right?  That's, that is Judge Ishii's statement. I think, I think what counsel is disputing is if there's any support for that statement. I'm sorry, I didn't hear the question. I think counsel is disputing whether there is any support for that statement. Your Honor Any evidence to support that statement. The statement that he's free to leave. You heard your opposing counsel say that there was no such statement ever made. Your Honor, there is no quote statement, you are free to leave. I believe that the judge's statement was a reasonable inference from the fact that the officers had told the defendant he was not in custody. Therefore, leading to the reasonable inference that the defendant was told he was free to leave. During the time period that the officers came in, you said that there was other business going on in the store. It wasn't clear to me in reading the briefs what the situation was. They come in and we know he was behind the cash register. They know they ask about the gun. He made an effort for the gun. They stopped him and then they took him over. But at that stage, is there another person in the store? Are there customers in the store? What is the factual situation at that time before they took him to the office? Your Honor, at some point during that interaction, the defendant's brother-in-law did come into the store. The store was able to stay open and so there was somebody working the cash register while the interview was going on. And on the recording, as the Court noted, you can hear business in the background. It was obvious from the noises that could be heard from the office that there was still normal business operations going on in the main part of the store. Even though the door was closed, you could hear that going on? Yes, Your Honor. And in addition, the defendant did acknowledge... I'm sorry, Your Honor. How do we know that? I'm sorry, Your Honor? How do we know that? The recording that was introduced into evidence and Judge Ishii commented that he could hear from the recording that there was business ongoing in the store as the interview was taking place. The defendant also... There's nothing in the recording about telling him he's free to leave? I'm sorry? There's nothing on the recording telling the defendant that he's free to leave? He's told that he's not in custody. So there's no... On the recording? Yes. On the recording, the defendant is told he's free to leave. The form is read to him... Well, wait a minute. Wait a minute. That's in dispute. Are you saying that he was told, quote, you are free to leave, unquote? No. Okay. I'm saying that the defendant was told he's not in custody. You did seem to say that, that he was told he's free to leave. I'm sorry if I mixed my words. What I was trying to say was that Judge Ishii, his statement in the conclusion of facts was that the defendant was not in custody, comma, that he was free to leave. And I'm saying that that's a reasonable inference from the statement to the defendant that he's not in custody. But Judge Ishii actually said he was told he's free to leave. It's quite different to be free to leave as opposed to being told. There's nothing on the tape that supports a finding that he was told he's free to leave, right? There's nothing in the case that supports that quote, that those words were used. Judge Ishii specifically said that the defendant was told. There's a pause indicated by dashes. Obviously, he was not being in custody, comma, that he was free to leave. So my position is that Judge Ishii made a reasonable inference from the fact that he was told he was not in custody that that means he was free to leave. Not that he was told you are free to leave. Correct. Not that he was told. So when you stood there and you represented to us that he was told he's free to leave, you were sort of stretching the record. I'm sorry if I said that. I did not mean to say that. I've always thought that that was a reasonable inference from the fact he was told that he was not in custody. Well, we can all check the tape, you know. Fortunately, we're on video, so you can go back and see what you actually said. My recollection is that you said he was told he's free to leave. This is where we went off. Now, just to make it perfectly clear, you are not, are you now or are you not taking the position that he was told he's free to leave? I'm not saying that he was told he was free to leave. That's nowhere in any of the record. Okay. And insofar as Judge Ishii's statement is concerned, if he's made a finding that the defendant was told he's free to leave, that's not supported by the record, right? Your Honor, I believe that Judge Ishii's conclusion is supported as a reasonable inference from No, I asked you a question, and you want to now answer a different question. I'm sorry. Why don't you answer the question that I asked you, and then you can add whatever you want. That I don't believe that. Can you please ask the question? It's best to listen to it the first time and answer it the first time rather than having Other counsel have done that, too, you know. Their ability to not listen to questions is not really helpful. Your Honor, I The question is, insofar as Judge Ishii made a finding that the defendant was told you are free to leave, that is not supported by the record. Is that right? Do you agree with that? Yes. Okay. So we do not, we cannot count that in the calculus. But did Judge Ishii say that he was told he was free to leave? Your Honor, Judge Ishii, the quote from the record is that Mr. Singh was told that dash, dash, obviously he was not being in custody, comma, that he was free to leave. Ah, okay. And one interpretation of that statement is that the judge reasonably inferred from the statement to the defendant that he was not in custody that he was, to understand, he was free to leave. Not that he was told you are free to leave. No, Your Honor. That's not, that was not part of the record. Insofar as you said that it was, then you are mistaken. If I said that, I apologize. That was not my intention at all. That's what I understood you to say because that was, I was asking you the question because Ms. Yaroni specifically made the statement that there was no evidence supporting and finding that he was told he was free to leave. I asked you the question and you seem to say, oh yes, well, that was supported. My apologies, Your Honor. So how does that bear if he's not told he's free to leave? How does that bear on the determination? Your Honor, I believe that the judge's other factual findings, even if the court finds that the judge made a finding that the defendant was told he was free to leave, still support that he was not in custody. The judge still did find that the defendant was not being in custody and that he was told that, that this was a familiar shrine. And that is on the tape. You're not in custody is on the tape? You said stuff is on the tape, right? The whole thing was taped. I'm just trying to figure out what evidence there is to support the first part of the statement, you're not in custody. Your Honor, the recording has the reading of the rights from the rights form and the crossing out of the portion. The agent specifically says that he's crossing out the portion that says anything to do with custody. I don't specifically recall if the agent report says that he, there were two agents. And so one agent advised the defendant of his rights verbally without the form and told him that he was not in custody. I don't believe that portion was on the recording. The portion that was on the recording. I'm sorry, how does that get on the record? That's in his report? That's part of the report that the parties agreed there was not a disputed fact regarding that. And the report says he was told he's not in custody. Yes, Your Honor. There was a report done from the day of the defendant's arrest. And may I have a moment, Your Honor? Why don't you go find it in the record and read it to us? Do you know what page it's on? Composal page? Look at the bottom. There's a page number, an ER number. I'm looking for it right now, Your Honor. Well, we are well over your time. If you don't have it, maybe you can submit a 28J letter. Yes, Your Honor. I apologize. There were two different portions of testimony about when the defendant was told that he was not in custody. There was a record for the suppression hearing and there was a record made at the trial. And at the moment I cannot recall the exact source of that statement. I know that the defendant was told by agents once by at least once by Special Agent Prado and on another occasion by Special Agent Combiolo that he was not in custody. And this was in the record at the time of suppression hearing? I'm sorry, Your Honor? And this was in the record at the time of suppression hearing? That's what I'm trying to find, Your Honor. You don't know the answer to that? I don't remember off the top of my head. Okay. Thank you. Mr. Gavrani, you want to take a minute or both? I think you need to sit down and let opposing counsel take the lecture. Does the Court have any other questions on the issue of probable cause or the new trial issue? Your time is up. Thank you, Your Honor. Did you come to court without your excerpts of record? I was going to bring them electronically, but then I wasn't certain I'd be permitted to bring them in. Thank you for the additional time. The answer to my question is yes. I had the district court's order. I didn't have the subsequent volumes. You don't have the excerpts of record. Very bad idea. Poor practice to come to court without the excerpts. So I wanted to address just a few of the points, since I realize you were gracious enough to give me additional time. I wanted to address the question, Judge Wallace, that you interposed about custodial interrogation. I think that that finding actually goes to the fact that the district court was applying the Brown Fifth Amendment analysis rather than the Fourth Amendment, Royer totality analysis, because the language of custodial interrogation is different. Isn't it a factual finding? I think in this circumstance that the court was using it as its ultimate conclusion rather than using the terminology of de facto arrest, because the court wasn't applying the de facto arrest analysis. And so rather than it being a factual finding, I think it was, I read it as the court's ultimate legal conclusion that it was not an arrest. And you read that because not anything he said, but how you read it? Is that correct? Because it appears to be the court's ultimate conclusion, yes, Your Honor. But whether or not that's true in its ultimate conclusion, it can be a finding of fact. I think that's correct, Your Honor. And I think that it goes to the fact that the court wasn't necessarily applying the correct rubric. And so even if the court determined it wasn't custodial. How do you know that? I've been a district judge for some years, and I don't always, when I wrote opinions or gave decisions, I didn't write out whether or not I'm taking it for this or that. And maybe sometimes I wasn't too careful whether I'm saying it's a conclusion of a law or finding of fact. But there was no objection made to it. There was nothing that anybody said, as I see the record, that no, you're wrong, you're misapplying this. So why wouldn't we take it as a finding of fact? The defense counsel did urge the court to apply the tests under the Fourth Amendment, Your Honor. And so I did, I do think he reiterated those tests on multiple occasions and actually pointed out the citations in his brief to the relevant authority. But the court indicated that it reviewed the Brown and Mendenhall authority and then stated at Exercise of the Record 12 that the court actually didn't see any authority on what would constitute an arrest or what the factors were that the court should analyze. And I think we can deduce from that that the court was not looking to the Florida v. Royer analysis. The court was looking instead to the Brown v. Illinois Fifth Amendment custodial interrogation analysis. And so while the court may have made the finding that it was not custodial, I still think this Court can look at the totality of the circumstances and see that they squarely fit under Florida v. Royer and that they do rise to the level of giving the indicia of an arrest. So his findings, you'd have to demonstrate his findings of fact were clearly erroneous? Clearly erroneous? Yes, Your Honor. That is the standard if it was a finding of fact. But you have to say that your analysis clearly shows that he made a mistake. As to whether it was custodial, and then on the point we've been discussing as to that he was advised he was free to leave, I think as opposing counsel agrees, there was not an advisement. But you're jumping to another issue. I was talking about the issue that you were with before. But yes, both of them being factual findings subject to a clearly erroneous standard, Your Honor. So just very briefly, I wanted to point out that, again, Royer was in a public place and he was escorted to a private room. The defendant was escorted to a private room. Airport business was still being transacted. The record before the district court at the suppression hearing consisted of four exhibits submitted by the government. They were the police, the agent's report. It also included a CD-ROM of the audio recording. On appeal, I requested that that be transcribed, and that is in the executive record at 129-179. You can review the transcription. You also should have, at least in the record available to you in the district court, the audio recording. I did in my brief outline some differences when you actually listen. As we all know, when you listen to a situation occurring, it's different than seeing it in paper. Opposing counsel stated that it was possible to hear business being transacted even though the door was closed. And I would submit. The opposing counsel said the district judge said he heard. And I would submit that when listening to the audio recording and the way that I read the district court's decision is that listening to the audio recording, business is being transacted, but you can only hear that when the door is opened. Agent Prado did leave the interview room temporarily. He was speaking to the U.S. Attorney on the phone, and he talked to someone else in the store. And it's you're able to hear business being transacted, but not at the time that the door is closed. You mean they say in the record, I'm opening the door, I'm closing the door? Yes, Your Honor. Did they actually say that? Yes. It's in the transcription of the audio recording that's in the record at 129-179. Okay. We'll look at it. You don't need to read it to us. Because your time is way over. And then the final issue is that I did want to clarify one piece of testimony. Agent McCullough didn't actually say that he made, or, Your Honor, at least I wanted to clarify, what he said was he kind of reached for the gun, and that is a direct quote of what, but it was in the context of sort of pointing to it and sort of kind of indicating the officer being helpful in answering his question of where the gun was. And I just wanted to say that I think that that's not the same as being, as making an effort or an intention to control the gun. So on that point, I wanted to clarify the agent's testimony. Thank you. Thank you.  You will stand submitted.
judges: Wallace, Kozinski, O'Scannlain